# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENO J. RAPONE | : | |
| 573 W Valley Road | : | No: _____ |
| Wayne, PA 19087 | : | CIVIL CASE |
|      Plaintiff | : | |
|      v. | : | JURY TRIAL DEMANDED |
| PETE HEGSETH, | : | |
| SECRETARY OF DEFENSE | : | |
| 1000 Defense Pentagon | : | |
| Washington, DC 20301-1000 | : | |
|      and | : | |
| U.S. DEPARTMENT OF DEFENSE | : | |
| 1000 Defense Pentagon | : | |
| Washington, DC 20301-1000 | : | |
|      and | : | |
| Defense Logistics Agency Troop Support | : | |
| 700 Robbins Avenue, Building 45 | : | |
| Philadelphia, PA 19111 | : | |
|      Defendants | : | |

## COMPLAINT

Plaintiff, GENO J. RAPONE (hereinafter "Plaintiff" or "Mr. Rapone"), by and through his undersigned counsel, Dimitri Smirnov, Esquire, hereby files this Complaint against Defendants and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action under Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 (incorporating the standards of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq.), to redress Defendants' unlawful disability discrimination, failure to provide reasonable accommodations, creation of a hostile work environment, and retaliation against Plaintiff, a highly decorated disabled military veteran and cancer survivor employed as a GS-12 Management and Program Analyst at the Defense Logistics Agency-Troop Support in Philadelphia.
2. Despite Plaintiff's superior qualifications, top rankings in competitive selection processes, and documented high performance, Defendants passed over Plaintiff for two promotions in 2022 in favor of less-qualified candidates who personal connections to Plaintiff's supervisors.

3. Additionally, Defendants subjected Plaintiff to a pattern of humiliating, intimidating, and differential treatment because of Plaintiff's disabilities (including radiation fibrosis from life-saving cancer treatment and related conditions), publicly shamed Plaintiff and other disabled veterans regarding handicap parking, ridiculed Plaintiff's legitimate health and safety requests during illness outbreaks, ignored Plaintiff's physician's recommendations for reasonable accommodations, and created an intolerable work environment that has exacerbated Plaintiff's physical and emotional injuries. Plaintiff seeks compensatory damages, promotion with retroactive back pay, injunctive relief to correct the ongoing accommodation violations and hostile work environment, and such other relief as the Court deems just.

## PARTIES

4. Plaintiff GENO J. RAPONE is an adult individual residing at 573 W. Valley Road, Wayne, PA 19087 (Tredyffrin Township).  Plaintiff is a GS-12 Step 10 Management and Program Analyst (GS-0343 series) at DLA Troop Support, Philadelphia, Pennsylvania, where he has been employed since approximately 2019.  Plaintiff is a 100% disabled veteran of the United States Air Force, with honorable service from 1995 to 2016, including as a commissioned officer serving as an ICBM Test/Launch Director and in support of Operations Iraqi Freedom and Enduring Freedom (with associated awards including the Bronze Star).

    a. Further, Plaintiff is a survivor of Stage IV cancer, diagnosed around age 42 (circa 2015), treated successfully with transoral robotic surgery (TORS) by Dr. Gregory Weinstein at the University of Pennsylvania, left neck lymph node dissection (40 nodes), and 25 sessions of radiation therapy.  Plaintiff has been cancer-free since approximately 2020 but suffers ongoing sequelae including radiation fibrosis of the neck, shoulders, and jaw (substantially limiting major life activities including working, performing manual tasks, lifting, and concentrating), thyroid disorder requiring medication, and gastrointestinal sensitivities that can be triggered or exacerbated by stress, certain environmental factors, and illness exposure.

    b. Plaintiff's conditions qualify him as an individual with a disability under the Rehabilitation Act.

    c. Plaintiff's disabilities were at all relevant times known to Defendants and his supervisors through personnel records, VA disability documentation, prior accommodation discussions, and direct disclosures.

5. Defendant PETE HEGSETH is the Secretary of Defense of the United States and is sued herein in his official capacity.  The Secretary bears ultimate responsibility for the formulation, implementation, and oversight of personnel policies, equal employment opportunity compliance, and management of the Department of Defense and its subordinate agencies, including DLA.

6. Defendant UNITED STATES DEPARTMENT OF DEFENSE (hereinafter, "Defendant DoD") is a cabinet-level executive department of the United States government.  The DoD is

responsible for the administration and oversight of the Defense Logistics Agency, and all policies governing federal civilian employment within its components.

7.  Defendant DEFENSE LOGISTICS AGENCY (hereinafter, "Defendant DLA"), including its Troop Support directorate, is a combat support agency within Defendant DoD and headquartered at Fort Belvoir, Virginia, with a major operational presence at 700 Robbins Avenue, Building 45, Philadelphia, PA 19111.

 a. DLA Troop Support is Plaintiff's employing component. At all times relevant hereto, DLA acted by and through its agents and employees, including but not limited to first-line supervisor Donald Weyler (hereinafter, "Mr. Weyler") and second-line supervisor Patrick Owens (hereinafter, "Mr. Owens"), each of whom acted within the scope of their employment and under color of federal authority.  Given the interrelation of operations, common management, ownership, centralized control of labor relations and personnel policies, and financial integration between Defendant DoD and Defendant DLA, Defendants may be treated as a single or joint employer for purposes of liability under the Rehabilitation Act.

8.  At all times relevant hereto, Defendants acted by and through their agents, supervisors, and employees, each of whom acted within the scope of their job duties and under the direction and control of Defendants.

## JURISDICTION AND VENUE

9.  This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343(a)(4) (civil rights), because this action arises under the laws of the United States, specifically but non-exclusively, the Rehabilitation Act of 1973, and seeks redress for violations of Plaintiff's civil rights as a federal employee with disabilities.

10.  This Court has personal jurisdiction over Defendants because Defendants maintain continuous and systematic contacts with the Commonwealth of Pennsylvania and this judicial district, including operating a major facility (DLA Troop Support) in Philadelphia, employing thousands of personnel in this district, and because the events giving rise to this action occurred in this district. The exercise of jurisdiction comports with traditional notions of fair play and substantial justice under International Shoe Co. v. Washington, 326 U.S. 310 (1945), and its progeny.

11.  Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(e) because a substantial part and/or all of the events or omissions giving rise to the claims occurred in this district (including all alleged discriminatory acts, non-selections, hostile conduct, and accommodation denials at DLA Troop Support in Philadelphia), and because Defendant DLA maintains its Troop Support operations in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.  On or about September 8, 2023, Plaintiff initiated contact with an Equal Employment Opportunity ("EEO") counselor at Defendant DLA and subsequently filed a formal Charge of

Discrimination alleging disability discrimination, failure to accommodate, hostile work environment, and retaliation under the Rehabilitation Act.

13. On or about March 29, 2026, Administrative Judge Shannon S. Levin issued a decision resolving the matter in a manner that permitted Plaintiff to proceed to federal court. Notably, previously assigned Administrative Judge Powers had imposed sanctions on Defendant DLA for its conduct during the administrative proceedings.

14. On or about March 31, 2026, Defendant DLA issued its final agency action, providing Plaintiff with notice of his right to file a civil complaint in federal district court.

15. Accordingly, the instant action is timely commenced within the applicable ninety (90) day period following receipt of the final action and right-to-sue notice.

16. Finally, Plaintiff has exhausted all required administrative remedies prior to filing this Complaint.

## FACTUAL BACKGROUND

17. Plaintiff incorporates by reference the averments of Paragraphs 1 through 16 as if fully set forth herein.

18. Plaintiff has over twenty-five (25) years of combined military and federal civilian experience in logistics, program management, analysis, and leadership. Plaintiff has consistently received high performance ratings and possesses the knowledge, skills, abilities, and experience to perform at the GS-13 and GS-14 levels. At all relevant times, Plaintiff's first-line supervisor was Mr. Weyler and his second-line supervisor was Mr. Owens, both of whom were fully aware of Plaintiff's disability status, cancer survivor history, radiation fibrosis, 100% VA disability rating, and medical restrictions.

19. In or around early 2022, Plaintiff applied for the position of Logistics Program Specialist, GS-0301-13, under Job Opportunity Announcement ("JOA") #DLATrpSpt22-11382203-MP. The selection process required review of resumes, testing, and interviews conducted by a three-member panel of supervisors, followed by ranking of applicants based on knowledge, skills, scores, and experience. The final selection was required to be based upon overall merit ranking.

20. On or about May 4, 2022, Plaintiff was notified that he was not selected for the GS-13 position. Plaintiff subsequently learned from colleague Don Craig that Plaintiff had been ranked #3 out of four candidates. Despite this strong ranking, Mr. Fran Flynn (ranked #4) was instead selected for the position. Upon information and belief, Mr. Weyler (who did not attend or participate in any candidate interviews) influenced or made the selection decision in favor of Mr. Flynn because the two had served together for many years in the U.S. Army, creating an improper personal and professional preference that supplanted the merit-based process mandated by federal hiring rules and Defendant DLA policy.

21. Even after Mr. Flynn's selection for the USSTRATCOM planner role associated with the GS-13 position, Mr. Weyler continued to assign Plaintiff the duties and responsibilities properly belonging to that higher-graded position (Mr. Flynn's position), without providing Plaintiff a promotion, increased compensation, or official title of same.  This constituted both an adverse denial of advancement and evidence that Defendants knew Plaintiff was fully qualified and capable of performing the higher-level work—yet still denied him the position and pay because of his disability and because of Mr. Weyler's personal relationship with Mr. Flynn.

22. In or around June 2022, Plaintiff applied for the position of Supervisory Customer Operations Manager, GS-0301-14, under JOA #DLATrpSpt22-11513246-MP.

23. On or about August 3, 2022, Plaintiff was notified that he was not selected.  Plaintiff subsequently learned from panel board member Mr. John Farfara, that Plaintiff had been ranked #1 on both resume review and experience.  Mr. Farfara explicitly told Plaintiff that he (Plaintiff) was the most qualified candidate for the position and could not explain or justify why Plaintiff was not selected, despite the panel's clear ranking.

24. Instead, the selecting official, Mr. Owens, selected Ms. Bridget Padua (hereinafter, "Ms. Padua"), who had previously worked with Mr. Owens in a prior professional capacity.  The selection of a personal and professional acquaintance over the demonstrably most qualified, top-ranked candidate further evidences pretextual, non-merit-based decision-making and favoritism all to the very detriment of Plaintiff.

25.  These non-selections of Plaintiff—despite his superior qualifications, objective top rankings by panel members, and proven ability to perform the higher-level duties—occurred at a time when Defendants were fully aware of his disabilities. The selections of less-qualified or personally connected individuals, the continued assignment of higher-level work to Plaintiff without promotion or pay, and the broader pattern of disability-based hostility and differential treatment detailed below give rise to a powerful inference that Plaintiff's disability was a motivating or determinative factor in the adverse employment decisions, or that Defendants' proffered reasons were pretext for unlawful discrimination.

26.  In or around October 2022, Mr. Owens publicly and loudly notified Plaintiff and two of Plaintiff's co-workers (also disabled military veterans) in the open office environment that they were not allowed to park in handicap-designated parking spaces and would be ticketed if they did so. This conversation was extremely embarrassing, intrusive, and humiliating, as it was overheard by the entire office and unnecessarily publicized Plaintiff's and his colleagues' private medical conditions and disability status without any legitimate operational necessity or sensitivity to privacy or dignity concerns.

27.  Beginning in late 2022 and continuing through 2023, with the rollout of Defendant DLA's Future of Work (hereinafter, "FoW") policies and pilot programs permitting flexible and remote work arrangements, Mr. Weyler treated Plaintiff differently and less favorably than similarly situated non-disabled colleagues. While other employees were permitted to work late, arrive and

depart at their discretion, reduce in-office days, or work remotely, Plaintiff was forced to report to the physical office even before the official commencement of the FoW pilot and was denied equivalent flexibility or accommodations for his disabilities.

28. In or around December 2022, after Plaintiff submitted a memorandum seeking clarification on FoW policies, Mr. Weyler told Plaintiff that he was "on General Shirley's radar." Plaintiff reasonably perceived this statement as a threat intended to chill his protected conduct and speech regarding workplace policies and his rights as a disabled employee.

29. In January 2023, following the COVID-19 pandemic, after a return to increased in-office presence, numerous employees including Plaintiff contracted Norovirus, COVID-19, and/or RSV. As a cancer survivor with compromised resilience and legitimate concerns about exposure to illness (which could trigger or exacerbate his gastrointestinal conditions and overall health), Plaintiff made a reasonable request for basic hygiene supplies such as soap and paper towels for restrooms and offices.  Rather than supporting this health-protective request, Mr. Weyler and LCDR Josh Hart (hereinafter, "LCDR Hart"), subjected Plaintiff and his request to ridicule, mocking, and dismissive treatment, further contributing to a hostile and demeaning work environment.

30. On or about March 28, 2023, during a meeting with Mr. Weyler to discuss completion of Plaintiff's Defense Performance Management Program ("DPMAP") evaluation, Mr. Weyler initially provided guidance but then abruptly became enraged. He violently punched his desk and slammed his keyboard in an aggressive and intimidating manner. This outburst created a threatening and hostile atmosphere and exemplified the unpredictable and intimidating supervisory conduct Plaintiff was forced to endure.

31. On or about May 24, 2023, Mr. Weyler called a meeting to discuss Plaintiff's job description. During the meeting, Mr. Weyler's demeanor shifted abruptly from friendly to hostile and aggressive. The meeting escalated to the point that a colleague of Plaintiff suffered a medical emergency in Plaintiff's presence.  However, rather than assisting the colleague or de-escalating the situation, Mr. Weyler simply walked out of the room, abandoning Plaintiff and the colleague in crisis.  Mr. Weyler's actions, or lack thereof, demonstrated a shocking and callous disregard for employee health and safety.

32.  Having witnessed this conduct and reasonably fearing further escalation or retaliation, Plaintiff invoked his Weingarten rights under federal labor law, specifically requesting that a union representative be present for any future meetings between Mr. Weyler and Plaintiff or his colleagues.

33. On the same date, May 24, 2023, Plaintiff submitted a formal request for Reasonable Accommodation, supported by medical documentation and recommendations from his treating physician. The physician recommended maximum flexibility in work arrangements, specifically up to one (1) day per week in the office when "stressors" (factors exacerbating Plaintiff's radiation fibrosis, pain, gastrointestinal sensitivities, or other conditions) were not present, in

order to enable Plaintiff to manage his disabilities, maintain his health, and perform his essential job functions effectively.

34. Despite this clear medical recommendation and Plaintiff's good-faith request, Defendants failed and refused to provide the requested accommodation or to engage in a good-faith interactive process.  Mr. Weyler instead directed Plaintiff to report to the office on specific fixed days (e.g., Thursdays) without regard to medical advice, the presence or absence of stressors, or Plaintiff's health status.

35. In stark contrast, other employees—including those with accommodations, and those without—were and are permitted significantly greater flexibility, including the ability to come in late, leave early, choose their in-office days, or work remotely at will.  This inconsistent, arbitrary, and discriminatory application of work policies has denied Plaintiff the equal terms, conditions, and privileges of employment to which he is entitled as a qualified individual with a disability and has directly contributed to the exacerbation of his physical and mental health conditions.

36.  The foregoing conduct—including the public shaming and outing of Plaintiff's and other disabled veterans' medical conditions regarding parking; the ridicule and dismissal of Plaintiff's legitimate health and safety requests during illness outbreaks; Mr. Weyler's violent desk-punching outburst; the abandonment of a colleague during a medical emergency; the differential and unfavorable enforcement of FoW policies against Plaintiff; the "on General Shirley's radar" threat following Plaintiff's protected memo; and the ongoing refusal to honor Plaintiff's physician-recommended reasonable accommodation—constitutes severe and pervasive harassment based on Plaintiff's disability.

37. Furthermore, such conduct has created an intimidating, hostile, and offensive work environment that has interfered with Plaintiff's ability to perform his job, caused him significant emotional distress, anxiety, humiliation, and physical symptoms, and would cause any reasonable person in Plaintiff's position to find the conditions intolerable.

38. Plaintiff's protected activity includes his May 24, 2023 request for reasonable accommodation, his invocation of Weingarten rights, his prior complaints about discriminatory treatment and FoW policies, and his September 2023 EEO charge.

39. Following this protected activity, Defendants have continued, maintained, and in some respects, intensified the adverse treatment, including persistent non-compliance with medical recommendations, inexplicably lowered performance reviews, and ongoing hostile conduct.

40. Defendants' actions thus establish a direct causal connection between Plaintiff's protected activity and the ongoing adverse actions and hostile environment.

41. As a direct and proximate result of Defendants' unlawful discrimination, failure to accommodate, hostile work environment, and retaliation, Plaintiff has suffered and continues to suffer significant damages, including but not limited to: lost wages, benefits, and promotional

opportunities (including the difference in compensation and benefits between GS-12 and the GS-13/GS-14 positions for which he was the most qualified or highly ranked); emotional distress, humiliation, anxiety, and loss of professional enjoyment and reputation; exacerbation of his physical disabilities and related medical conditions due to the stress and hostility of the work environment; and the necessity of pursuing FERS disability retirement to escape the intolerable conditions Defendants created and refused to remedy.

42. Nevertheless, Plaintiff has been and remains ready, willing, and able to perform the essential functions of his position and the higher-graded positions with the reasonable accommodations to which he is entitled.

## COUNT I

### Violation of the Rehabilitation Act of 1973

*(Disparate Treatment / Failure to Promote / Non-Selection Discrimination)*

43. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 42 as if fully set forth herein.

44. Section 501 of the Rehabilitation Act, 29 U.S.C. § 791 (hereinafter, "the Rehabilitation Act"), prohibits federal agencies from discriminating against qualified individuals with disabilities in regard to job application procedures, hiring, advancement, promotion, compensation, and other terms, conditions, and privileges of employment.

45. Additionally, the Rehabilitation Act imposes an affirmative duty to provide reasonable accommodations and prohibits both disparate treatment and the creation of a hostile work environment based on disability.

46. Plaintiff is a qualified individual with a disability who, with or without reasonable accommodation, can perform the essential functions of his GS-12 position and of the GS-13 and GS-14 positions for which he applied and was ranked at or near the top of the candidate lists.

47. Defendants discriminated against Plaintiff on the basis of his disability by failing and refusing to select him for the GS-13 Logistics Program Specialist position (JOA #DLATrpSpt22-11382203-MP) and the GS-14 Supervisory Customer Operations Manager position (JOA #DLATrpSpt22-11513246-MP), despite his superior qualifications, objective high rankings by panel members (including being ranked #1 on resume and experience for the GS-14), and proven ability to perform the higher-level duties (as evidenced by Defendants' own assignment of such duties to Plaintiff post-non-selection without additional compensation).

48. The non-selections and denial of promotion/higher compensation were adverse employment actions.

49. A causal connection exists between Plaintiff's disability and the adverse actions, as demonstrated by, among other things: (a) Defendants' and supervisors' actual knowledge of Plaintiff's disability, cancer history, radiation fibrosis, and medical restrictions; (b) the highly

irregular and pretextual nature of the selection processes, including a non-interviewing supervisor (Mr. Weyler) influencing or dictating the GS-13 selection in favor of his longtime Army colleague, and the selecting official for the GS-14 (Mr. Owens) choosing his prior professional acquaintance over the panel's #1-ranked candidate; (c) the panel member's (Mr. Farfara) explicit statement that Plaintiff was the most qualified and Mr. Farfara's inability to explain the rejection; (d) Defendants' continued assignment of higher-graded duties to Plaintiff without promotion or pay, confirming Defendants knew Plaintiff was qualified; (e) the timing of the non-selections in proximity to Plaintiff's known disability status and accommodation needs; and (f) the broader pattern of disability-based hostility, public shaming, ridicule, and differential treatment detailed above, which supports an inference that disability animus infected the promotion decisions and created a poisoned environment for Plaintiff's advancement.

50. Defendants' proffered reasons for the non-selections, if any, are pretextual and unworthy of credence. The selections deviated from merit principles, favored personal connections over objective rankings and qualifications, and occurred against the backdrop of a hostile environment targeting Plaintiff's disabilities.

51.  As a direct and proximate result of Defendants' unlawful disability discrimination in promotion decisions, Plaintiff has suffered lost promotional opportunities, back pay and benefits (the difference between his GS-12 compensation and the GS-13/GS-14 compensation from the respective start dates in 2022), emotional distress, humiliation, and damage to his career trajectory and professional reputation.

52. Accordingly, Plaintiff is entitled to promotion to a GS-14 level position (or a comparable position with similar responsibilities to those described in JOA #DLATrpSpt22-11513246-MP), with full retroactive back pay, interest, and benefits from on or about August 2022, together with compensatory damages and other relief.

## COUNT II

### Violation of the Rehabilitation Act of 1973

*(Failure to Provide Reasonable Accommodation)*

53. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

54. Under the Rehabilitation Act and the ADA[1] standards it incorporates, Defendants have an affirmative duty to provide reasonable accommodations to qualified individuals with disabilities who can perform the essential functions of their positions with such accommodations, unless doing so would impose an undue hardship on the agency.

---

[1] Americans With Disabilities Act of 1990.

55. Plaintiff is a qualified individual with a disability who, with the reasonable accommodation of flexible work location (up to one day per week in-office when stressors are not present, as recommended by his physician), can perform the essential functions of his position.

56. On May 24, 2023, Plaintiff made a timely and good-faith request for reasonable accommodation, supported by medical documentation from Plaintiff's treating physician specifically recommending maximum flexibility in work arrangements to manage his radiation fibrosis, gastrointestinal sensitivities, and related conditions.

57. Plaintiff currently holds a reasonable accommodation for remote work and does not report to the physical office. The requested accommodation and Defendants' ongoing violations of same, relate to ensuring full compliance with medical recommendations, avoiding any forced in-office presence or stressors that would exacerbate his radiation fibrosis and related conditions, and preventing discriminatory application of work policies. Defendants had a duty to engage in a good-faith interactive process with Plaintiff to identify and implement an effective accommodation.

58. Defendants failed and refused to provide the requested accommodation or any effective alternative.  Instead, Mr. Weyler imposed inflexible, arbitrary requirements (e.g., mandatory in-office presence on specific days such as Thursdays) that directly contradicted Plaintiff's physician's recommendations and ignored the presence or absence of medical stressors. This denial has continued to the present day.

59. Defendants applied accommodation and work-flexibility policies in a discriminatory and inconsistent manner. Employees other than Plaintiff, (both those with formal accommodations and those without) have been granted significantly greater flexibility, including the ability to set their own schedules, work remotely at will, arrive late, or leave early. Plaintiff, however, has been singled out for stricter, more punitive treatment despite his documented medical needs and high performance.

60. Defendants' failure to accommodate has denied Plaintiff equal terms, conditions, and privileges of employment, has directly exacerbated his physical disabilities and related medical conditions (including, non-exclusively, radiation fibrosis symptoms and gastrointestinal flares), and has caused him emotional distress, humiliation, and professional harm.  This constitutes independent unlawful discrimination under the Rehabilitation Act.

61. As a direct and proximate result of Defendants' failure to provide reasonable accommodation, Plaintiff has suffered and continues to suffer damages, including exacerbation of his disabilities, emotional distress, lost productivity and professional opportunities, and the need to pursue disability retirement.  Plaintiff is entitled to an order requiring Defendants to provide the requested accommodation (or an equally effective alternative), compensatory damages, and other appropriate relief.

## COUNT III

## Violation of the Rehabilitation Act of 1973

*(Hostile Work Environment / Disability Harassment)*

62.  Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 61 as if fully set forth herein.

63. The Rehabilitation Act prohibits subjecting a qualified individual with a disability to a hostile work environment based on that disability.

64. To establish a hostile work environment claim, Plaintiff must show that he was subjected to unwelcome conduct based on his disability that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and that Defendants knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

65. Plaintiff was subjected to unwelcome verbal, physical, and conduct-based harassment because of his disability, including but not limited to:

(a) public and humiliating outing of his and other disabled veterans' medical conditions and handicap parking needs by Mr. Owens in October 2022, as overheard by the entire office;

(b) ridicule and mocking by Mr. Weyler and LCDR Hart of Plaintiff's legitimate health and safety requests for soap and paper towels during the January 2023 illness outbreak;

(c) Mr. Weyler's violent desk-punching and keyboard-slamming outburst during the March 28, 2023 DPMAP meeting, creating an intimidating and threatening atmosphere;

(d) Mr. Weyler's abandonment of Plaintiff and a colleague during a medical emergency in the May 24, 2023 meeting;

(e) differential and unfavorable enforcement of FoW policies against Plaintiff compared to non-disabled colleagues, including forced in-office presence and inflexible scheduling;

(f) the threatening statement by Mr. Weyler that Plaintiff was "on General Shirley's radar" following Plaintiff's protected memo on FoW policies; and

(g) ongoing refusal to honor Plaintiff's physician-recommended reasonable accommodation while granting greater flexibility to others.

66. This conduct was severe and pervasive and was not isolated or trivial.

67. Said conduct formed a continuous pattern spanning from at least 2022 through the present, involving public humiliation, physical intimidation, callous disregard for health crises, and systemic differential treatment targeting Plaintiff's disabilities. The conduct would be objectively offensive and abusive to any reasonable person in Plaintiff's position, and Plaintiff subjectively

experienced it as such, causing him significant emotional distress, anxiety, humiliation, their respective physical manifestations, and an exacerbation of his physical symptoms.

68.  The harassment affected the terms, conditions, and privileges of Plaintiff's employment by interfering with his ability to perform his job, creating a constant state of fear and stress, denying him equal access to flexible work arrangements available to others, and ultimately contributing to his need to pursue disability retirement to escape the intolerable conditions.

69. Defendants, through their supervisors Mr. Weyler and Mr. Owens (the primary perpetrators), had actual knowledge of the harassing conduct and failed to take any prompt or effective remedial action. To the contrary, the supervisors continued and escalated the conduct, and higher management failed to intervene despite Plaintiff's complaints and EEO activity.

70. In fact, Defendants failed to intervene or remedy the conduct set forth by Mr. Weyler and Mr. Owens, despite reports and investigations, conducted by Defendants themselves, confirming Mr. Weyler and Mr. Owens' abhorrent conduct.

71.  As a direct and proximate result of Defendants' creation and maintenance of a disability-based hostile work environment, Plaintiff has suffered and continues to suffer damages, including emotional distress, humiliation, exacerbation of his disabilities, and professional harm.

72.  Accordingly, Plaintiff is entitled to compensatory damages, injunctive relief to end the hostile environment, and other appropriate relief.

## COUNT IV

### Violation of the Rehabilitation Act of 1973

*(Retaliation for Protected Activity)*

73. Plaintiff realleges and incorporates by reference paragraphs 1 through 72 as if fully set forth herein.

74. The Rehabilitation Act prohibits retaliation against any individual who has opposed any practice made unlawful by the Act, or who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act.

75. Protected activity includes but is not limited to, requesting reasonable accommodation and filing or participating in EEO complaints and/or processes.

76. In the instant matter, Plaintiff engaged in protected activity, including but not limited to: (a) submitting a formal request for reasonable accommodation on May 24, 2023, supported by medical documentation; (b) invoking his Weingarten rights on May 24, 2023; (c) submitting a memorandum seeking clarification on FoW policies in or around December 2022; and (d) filing his EEO charge on or about September 8, 2023, and participating in the subsequent administrative proceeding.

77. Following Plaintiff's protected activity, Defendants took adverse actions against him, including but not limited to:

(a) continuing and refusing to correct the denial of his physician-recommended reasonable accommodation;

(b) imposing inflexible in-office requirements directly contrary to medical advice;

(c) inexplicably lowering Plaintiff's performance reviews despite Plaintiff's strong track record of maintaining the highest of performance scores;

(d) maintaining and in some instances intensifying the hostile and differential treatment detailed above; and

(e) failing to remedy the ongoing hostile work environment.

78. A causal connection exists between Plaintiff's protected activity and the adverse actions. The temporal proximity between the May 24, 2023 accommodation request/Weingarten invocation and the ongoing refusal to accommodate and continued hostile treatment supports an inference of retaliation. Additionally, the "on General Shirley's radar" comment following Plaintiff's protected FoW memo, and the pattern of intensified adverse treatment after the EEO charge was filed, further establishes retaliatory animus and causation.

79. More particularly, Defendants' adverse actions were materially adverse and would have dissuaded a reasonable worker from making or supporting a charge of discrimination or requesting accommodation.

80.  Unfortunately, the actions have caused Plaintiff significant harm, including exacerbation of his disabilities and the need to pursue disability retirement.

81. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered and continues to suffer damages, including emotional distress, humiliation, exacerbation of his disabilities, and ongoing professional harm.

82. Accordingly, Plaintiff is entitled to compensatory damages, injunctive relief, and other appropriate relief to remedy the retaliation and prevent its recurrence.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in Plaintiff's favor and against each Defendant, and grant the following relief:

a.  Declare that Defendants have violated the Rehabilitation Act of 1973 by discriminating against Plaintiff on the basis of disability, failing to provide reasonable accommodations, creating and maintaining a hostile work environment, and retaliating against Plaintiff for engaging in protected activity;

b.  Order Defendants to promote Plaintiff to a GS-14 level position (or a comparable position with responsibilities similar to those described in JOA #DLATrpSpt22-11513246-

MP), with full retroactive back pay, interest, step increases, and all associated benefits from on or about August 2022 (or the respective effective dates of the denied promotions);

c.  Order Defendants to immediately provide Plaintiff with the reasonable accommodation of flexible work location (up to one day per week in the office when medically appropriate and stressors are not present, or such other effective accommodation as may be agreed upon or ordered by the Court), and to cease the discriminatory and inconsistent application of work-flexibility and accommodation policies;

d.  Permanently enjoin Defendants, their officers, agents, employees, successors, and all persons acting in concert or participation with them (including but not limited to and specifically supervisors Donald Weyler and Patrick Owens) from discriminating against Plaintiff on the basis of disability; from creating, maintaining, or permitting a hostile work environment; from retaliating against Plaintiff for protected activity; from failing or refusing to provide reasonable accommodations; and from engaging in any other unlawful employment practices against Plaintiff;

e.  Order Defendants to develop, implement, disseminate, and enforce effective, comprehensive policies and training programs prohibiting disability discrimination, harassment, and retaliation, ensuring proper handling of accommodation requests, and mandating merit-based, non-discriminatory selection processes, with specific accountability measures for supervisors and management;

f.  Order Defendants to correct Plaintiff's personnel records, performance evaluations, and any other documents to reflect accurate, non-discriminatory information and to remove any references or effects of the unlawful conduct alleged herein;

g.  Award Plaintiff compensatory damages in an amount to be determined at trial, but not less than $300,000, for emotional distress, pain and suffering, humiliation, anxiety, loss of enjoyment of life and professional reputation, and other non-economic harms caused by Defendants' unlawful conduct, to the full extent permitted by law;

h.  Award Plaintiff back pay, front pay (in the alternative to or in addition to promotion), lost benefits, and all other economic damages in amounts to be determined at trial;

i.  Award Plaintiff his reasonable attorneys' fees, costs, and expenses incurred in the prosecution of this action, pursuant to 29 U.S.C. § 794a and any other applicable provision of law;

j.  Award Plaintiff prejudgment interest on all monetary awards;

k.  Grant such other and further relief as the Court deems just, proper, and equitable, including but not limited to any necessary adjustments to Plaintiff's retirement or benefits calculations arising from the unlawful conduct.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

___/s/____*Dimitri Smirnov*_____

Date: 6/29/26

**Dimitri Smirnov, Esquire**
Attorney ID # 313446
Law Office of Dimitri Smirnov, P.C.
306 Lakeside Park
Southampton, PA 18966
Phone: (267) 684-6880
Email: Dimitri@Smirnovlaw.com